**FANENE S. SCANLAN, Plaintiff**

**v.**

**FANENE FETAIAIGA KAVA and DOES I-X, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 13-00

July 8, 2002

Before KRUSE, Chief Justice, ATIULAGI, Associate Judge, and
SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiff, Paul F. Miller
For Defendant, Charles V. Ala`ilima

OPINION AND ORDER

This case is but yet another sad chapter in what unfortunately has been an
ongoing, longstanding contest between two family factions, apparently
unrelated by blood but tied to a common *matai* title, *Fanene*, attached to
the village of Pago Pago. The Fanene title today has two holders, one
from each faction; however, the village of Pago Pago has been neither

prepared to recognize nor accept the Fanene title as a split title. Consequently, this state of affairs has begotten its own parade of practical problems since there is only one Fanene title cognizant within the traditional village polity.[1]

To compound difficulties, court decisions have declared that certain Fanene family land known as *Lalopua*, at issue before us now, is exclusively owned by one of these Fanene factions, although in part occupied by the other for many years. The faction asserting ownership is seeking to oust or evict the other.

## Discussion

The modern day situation with the Fanene family of Pago Pago has in large part been the product of a tortuous evolutionary process generated not through customary Samoan development, but by operation of law within the imported legal framework.

### A. Split Matai Titles & Communal Factionalism

For reasons now clouded with time, two persons were permitted to first register the Fanene *matai* title in 1906, when the then newly established U.S. Naval government first began to regulate *matai* title registration. The origin of dual Fanene titleholders was alluded to in testimony given and discussed in *Taofi v. Foster*, 1 A.S.R. 464 (Trial Div. 1932). It appears that at some time prior, there were two factions that had also emerged within the Mauga family of Pago Pago, each with its own titleholder—a Mauga Manuma and a Mauga Lei. *Id.* at 465. Each of these Mauga appointed his own Fanene. Fanene Tavai and Fanene Mataumu respectively. *Id.* It further appears that from this precedent, dual Fanene title-holders have persisted. Our review of the cases reveals that principally because of the fact of dual registration in 1906, the Court in 1965 determined that the Fanene title was a "split title" between two unrelated Fanene family groups, and thereby affirmed the registration of a second titleholder in *Fanene Filo v. Vaoalii K. Fanene*, 4 A.S.R. 603

---

[1] Plaintiff Fanene Scanlan claims that the Fanene holders from his family branch are the only legitimate reference in the village honorifics, or salutation, "*tei ma anoalo*." However, he readily admits to present day realities that not only recognizes but admits his co-holder Fanene Kava to be seated at the village council and be deferred to as the Fanene. Plaintiff explained that the defendant and he have operated under an informal understanding that whomever arrives first at a village council meeting assumes the Fanene's seat and post. It goes without saying that plaintiff's claim to singular legitimacy is vigorously opposed by the defendant's side.

(Trial Div. 1965), hereafter "the 1965 split title decision."[2] Ironically, however, the Court early arrested the notion, and any development, of dual Mauga titleholders. Thus in 1913, the Court in *Mauga v. Taelase*, 1 A.S.R. 276 (Trial Div. 1913), declared that the Mauga title was *not* a split title for division among multiple titleholders because it would, among other things, destroy the prestige and dignity of the great title. This was later affirmed in *In re Matai Title Mauga*, 4 A.S.R. 132, 140 (Lands & Title Div. 1971) ("We are reversing our decision in *Tauvevematalilo* [sanctioning split titles] since upon reconsideration it was ill-advised and in substantial derogation of Samoan custom").

The upshot of these court decisions is undeniably the following: the attempted splitting of the Mauga title, which in turn gave rise to the creation of split Fanene titles, was stifled by judicial fiat while its Fanene split-title spin off was not only left undisturbed, but given the Court's imprimatur. The Court has thus seemingly given inconsistent effect to *fa`a Samoa*.

## B. Land Lalopua

We next note that in 1932 the Court, in *Taofi v. Foster*, had awarded the Fanene title to Filo Foster, plaintiff Fanene Scanlan's predecessor in title. *See generally* 1 A.S.R. 464 (Trial Div. 1932). Filo then singularly held the Fanene title for a period of thirty-three years until, as we have seen, the Court in the 1965 split title decision allowed a Vaoali`i K. Fanene (defendant Fanene Kava's predecessor in title) to be registered as a second Fanene titleholder.

While Filo alone held the Fanene title, he offered *Lalopua* for registration, on October 11, 1944, as the communal property of "the Fanene family." This offer to register not only attracted a third-party counter-claim, from the Mauga family, but also a counter-claim from within the Fanene family from one Taofi, the same individual who vied with Filo for the Fanene title in the 1932 case. Taofi attempted to claim *Lalopua* as his "individually-owned" land, and the resulting land dispute came before the Court in 1945 as *Taofi v. Fanene*, 2 A.S.R. 197 (Trial Div. 1945), hereafter "the 1945 *Lalopua* land case." The Court, not surprisingly, found in favor of the extended family and against the individual family member (as well as against the third-party claimant).[3]

---

[2] The Court here observed that "[t]he matai name register shows that Pulu Saofeatalai was registered as the holder of the Fanene title on October 10, 1906, and that on October 30, 1906, Vaomalo was also registered as a Fanene." 4 A.S.R. at 604. It then concluded that "the Fanene title is a *split* title." *Id.*

[3] Taofi's claim to title was simply that, a mere claim to title. In order to

## C. Split Titles & Factional Communal Ownership

In 1971, the Land and Titles Division further took up the issue of *Lalopua* and redefined the scope of the 1945 *Lalopua* land case's holding—that the land belonged to the Fanene family—by declaring that *Lalopua* was owned by the Fanene Filo faction of the family, to the exclusion of Fanene Tauveve's (defendant Fanene Kava's predecessor in interest) faction. *Fanene Foster for Herman Scanlan v. Fetaiaiga T. Fanene*, LT No. 1089 & *Fanene Foster & Richard Foster v. Tauveve Fanene*, LT No. 1154 (Consolidated), (Land & Titles Div. 1971) (Findings of Facts and Judgment, entered Nov. 1, 1971) (hereinafter LT Nos. 1089 & 1154). The Court therefore further held that *pule* lay with the *matai* of Fanene Filo's branch.

Without regard to Samoan realities, the 1971 Court in its cursorily worded opinion simply arrived at these conclusions by first taking "judicial notice" of and then "re-affirm[ing]," without elaboration, "pertinent portions of the Court's decision in the 8-1932 (*Foster*, 1 A.S.R. 464) and 20-1945 (the *Lalopua* land decision) cases between these two families." LT Nos. 1089 & 1154, slip op. at 4. Seven months after, and apparently realizing that parts of *Lalopua* were being occupied by Fanene Kava's side of the family, the 1971 Court felt constrained to add, by way of separate addendum, that those members of the other side of the family occupying *Lalopua*—viz., Fetaiaiga Kava, now the present defendant Fanene F. Kava, and her children—could nonetheless remain on *Lalopua* as long as they rendered *tautua* (the obligation of rendering traditional service) to the holder of *pule*. *See generally Fanene Foster for Herman Scanlan v. Fanene*, 4 A.S.R. 66 (Land & Titles Div. 1972). The only attempt at explanation given by the Court for the addendum was "inadvertence and clerical error." *Id.* at 67. Otherwise the reader is provided neither rhyme nor reason for this belated amendment.

Intuitively, at least, the result seems only fair, but the underlying reasoning is conspicuously absent while the Court's premise remains baffling. Quite clearly, the Court, after apparently realizing the harshness of disentitling family members from family lands, had effectively attempted to mitigate matters by ready resort to equity without explanation. But by doing so, the Court has also effectively turned

---

establish a claim to individually owned land, a party must couple his claim with a showing that the land was (1) cleared in its entirety or substantially so from the virgin bush by him through his own initiative and not by, for, or under the direction of his aiga or its senior matai; (2) cultivated entirely or substantially so by him; and (3) occupied by him or his family or his agents continuously from the time of the clearing of the bush. *Fanene v. Magalei*, LT No. 64-77 (1977).

Samoan custom on its head, with the cumulative outcome of case development being the anomaly of a Samoan family split into two,[4] each with its own titleholder, and with one branch declared landless and owing *tautua* to the other. This incongruent state of affairs has, not surprisingly, proven to be a recipe for enduring turmoil and discontent.[5]

## D. LT No. 1089 and 1154 Holdings and Land Ownership

The 1971 Court, in our view, read too much into 8-1932 (*Taofi v. Foster*, 1 A.S.R. 464) and 20-1945 (the *Lalopua* land decision) in order to find a basis for its conclusion that *Lalopua* was owned *only* by the Fanene Filo faction of the family. First, *Taofi v. Foster* was a *matai* title contest. The issue here had nothing to do with landholding and the *matai* court had absolutely nothing to do with *Lalopua*.

Second, the 1945 *Lalopua* land case Court specifically found that "the true owner of the property in question is *the Fanene family* and Fanene Filo, as the matai of this family is entitled to register this land as communal land owned by him as the matai of the family." 2 A.S.R. at 200 (emphasis added).

Noteworthy with the *Lalopua* land case is the fact that the land *Lalopua* was offered for registration by Filo not as the communal land of Fanene Filo's side of the family, but as the communal land of the Fanene family. Additionally, and to put the 1945 case in proper perspective, there was, at the time, only one Fanene family—the family was not split until the 1965 split title decision—and one Fanene titleholder, Fanene Filo who represented *the whole Fanene family*. Support for this finding—that Fanene Filo was representing the whole Fanene family, as opposed to only one faction of the family—is to be found in the records of the 1965 split title decision as well as in *Fanene Filo v. Tauveve L. Fanene*, LT No. 1035 (Trial Div. 1970), wherein both instances Fanene Filo vigorously objected to the proposition that the Fanene title was a split title. Therefore, when Filo offered *Lalopua* for registration in 1944, he was operating under the premise that the family was not a split family, and thus in 1944, he was representing *all* of the Fanene family. The issue of factionalism was neither before the court in 1945 nor anywhere within

---

[4] The fact that the two branches of the Fanene family are not blood related does not *ipso facto* render a family split into two. Indeed, the Mauga family itself, the derivative source of the Fanene split, is comprised of three clans who are not blood related. *See In re Matai Title Mauga*, MT No. 12-98 (Land & Titles Div. 2001). But as we have seen the cases have declared that the Mauga title is not a split title.

[5] *See Fanene v. Fanene*, 26 A.S.R.2d (Land & Titles Div. 1994), for a sketch of the Fanene factions' litigation history.

its contemplation. Nowhere within the 1945 Court's judgment is there even the slightest hint of factional ownership of *Lalopua*.

Moreover, the 1971 Court's conclusions in LT Nos. 1089 and 1154 are in stark contrast with our treatment of other, albeit isolated, "split" title cases, where family lands were accorded corresponding "split" effect in accordance with factional usage. For example, the *matai* title Mulitauaopele of Lauli'i has had two titleholders from two unrelated family groups "for at least a hundred years." *In re Matai Title Mulitauaopele*, 16 A.S.R.2d 63, 69 (Land & Titles Div. 1990). In rejecting an attempt by one of the Mulitauaopele family lines to unify the title by seeking to abolish the other line's claim, the Court not only gave effect to the fact that "the two families have different lands," but went on to say that "it would be contrary to Samoan custom for them to . . . choose a single title holder with pule over both families' lands." *Id.* at 68.

 Lastly, the consequence of the holdings in LT Nos. 1089 and 1154 is the rather peculiar, if not farcical, situation of a *matai* title co-holder owing his peer the subservient obligation of *tautua*, an obligation which in the normal course runs from a family member to the family *sa'o* or senior *matai*. An even more curious consequence of the LT Nos. 1089 and 1154 holdings is the resulting situation of a Samoan family cognizant at law with a registerable *matai* title, but no communal lands; a state of affairs which simply cannot be reconciled with the truism that "the Samoan way of life has twin cornerstones, the matai system *and communal land tenure*." *Fairholt v. Aulava*, 1 A.S.R.2d 73, 78 (Land & Titles Div. 1983) (emphasis added).

> The twin cornerstones of the Samoan way of life are communal land tenure and the matai system. Each is essential to the other. Without the matai system to administer it, the communal land system becomes anarchy. *Without the communal land system, there is no reason for the matai.*

*Lavata'i v. Pen*, 30 A.S.R.2d 10, 15 (App. Div. 1996) (quoting *Tavai v. Silao*, 2 A.S.R.2d 1, 2 (Land & Titles Div). 1983)) (emphasis added). In *Lavata'i*, the Appellate Division further alluded to the constitutionally mandated policy of protective legislation requiring the courts to interpret statutes in a way which is protective of the Samoan custom. *Id.* at 16; *see also* AM. SAMOA REV. CONST. art. I, § 3. What we have seen here, however, is that the *matai* registration enactment has been, at least as far as the Fanene family has been concerned, somehow given effect to divide a once united family to the point that with subsequent case development, one branch of that family has been disenfranchised with respect to family land. Thus without communal land, or entitlement to land, what

338

essentially befalls the defendant's side of the family is the suggestion that one of its traditional foundations—cornerstones—is rendered legally non-existent.

 We are loath to continue upholding this aberrant view of Samoan custom. Although other decisions of this Court have seemingly upheld the 1971 Court's holdings in LT Nos. 1089 and 1154,[6] we note that these decisions, citing to the doctrine of *res judicata*, were grounded on mere acceptance of the holdings in LT Nos. 1089 and 1154, without comment or critical evaluation. Because we are of the view that the holdings of the 1971 Court were not only wrongly footed but simply inconsistent with the customs of the Samoan people, we decline to follow, and in lieu of the doctrine of *res judicata*, we cite to the provisions of the Treaties of Cession which require, among other things, "respect and protect[ion] . . . of all people dwelling in Tutuila to their lands,"[7] and that "the rights of . . . all people concerning their property according to their customs shall be recognized."[8]

### Findings and Conclusion

The evidence here shows that defendant's side of the family has occupied and shared *Lalopua* with members of plaintiff's side for generations. With the Court's visit to view the land in question, we noted not only shared burial ground with members of plaintiff's branch, but a defined area of settled occupation by defendant's side of the family in the way of permanent structures with subsistence plantations toward the *mauga* side, consistent with longstanding and settled occupation. This settled occupation exists side by side with a sub-faction within the Fanene Filo branch, Johnny Foster's family, who have been quite content to co-exist in harmony side by side with the defendant and her family.[9] The evidence further suggests that the animosity been the plaintiff and the defendant in this matter, as evident by the number of times they have appeared before the Court in recent times, predates to the 1971 litigation, when Fanene Filo signed a separation agreement on Lalopua in favor of Herman Scanlan, now Fanene Scanlan, which was objected to then by the present defendant. According to the defendant, plaintiff had at the time

---

[6] *See generally Fanene v. Fanene*, 19 A.S.R.2d 69 (Land & Titles Div. 1991); *Fanene v. Fanene*, 26 A.S.R.2d 8, 12 (Land & Titles Div. 1994).

[7] April 17, 1900 Cession of Tutuila and Aunu'u (February 20, 1929, ch. 45 Stat. 1253.)

[8] July 16, 1904 Cession of Manu'a Islands (May 22, 1929, ch. 6, 46 Stat. 4.)

[9] Plaintiff has also encountered familial estrangement within his own branch of family. *See In re Petition to Remove Fanene Title*, MT No. 04-95 (Land & Titles Div. 1995).

wanted to put up a structure on *Lalopua*, in anticipation of a lease to the one of the canneries and in derogation of her family's use of the land.

Since both parties have each assumed the *matai* title Fanene, the discord appears to have magnified. Plaintiff has variously complained about defendant's unwarranted intrusion into his sphere of *pule*, as upheld by the Courts, while defendant has countered with claims of capriciousness on the part of plaintiff in the exercise of *pule*.[10] Defendant claims, for example, that plaintiff has resisted her obtaining requisite government permits to allow her side of the family to do necessary repairs and renovations to their deteriorating homes.

Quite clearly, the resultant and atypical state of affairs with the once unitary Fanene family of Pago Pago persists to date with the plainly unworkable principle of two families, two *matai*, but one *pule*. From the evidence, and from our review of Fanene family history, we conclude that the 1971 Court's interpretation of the 1945 Court's holding in the *Lalopua* land case, viz., that land *Lalopua* is exclusively owned by only one branch of the Fanene family, was not only unnecessary but, as noted above, in derogation of defendant's branch's rights to "their lands" in accordance with Samoan custom. *See* April 17, 1900 Cession of Tutuila and Aunu'u (February 20, 1929, ch. 45 Stat. 1253.)

In our reading of the 1945 *Lalopua* land decision, all that the Court decided was that the land *Lalopua* was the communal property of *the Fanene family*—nothing more, and nothing less. In rejecting Taofi's individually owned claim, the 1945 Court did not thereby throw out the communal entitlement of those family members who are not members of Fanene Filo's branch, as the 1971 Court has necessarily implied.

Having regard to fundamental precepts of Samoan custom, as enunciated in *Fairholt v. Aulava*, *Tavai v. Silao*, and *Lavata'i v. Pen*, discussed *supra*, and taking into account Fanene family history as it evolved incongruously within the courts, we opt to follow the literal holding of the 1945 *Lalopua* land decision and decline to follow the unnecessary interpretation of the 1971 Court in LT Nos. 1089 and 1154.

---

[10] The Samoan concept of *pule*, not to be confused with the notion of "ownership," is the power or trust vested in the senior *matai* to administer family lands. *Lutu v. Taesaliali'i*, 11 A.S.R.2d 80, 87-88 (Land & Titles Div. 1989). However, a *matai*'s authority or *pule* over family lands is not unfettered when it comes to dealing with the rights of family members; rather, it must be used for the benefit of family members justly and fairly. It must not be used unreasonably and unjustly. *Pen v. Lavata'i*, 25 A.S.R.2d 164, 168 (Land & Titles Div. 1994), *aff'd Lavata'i v. Pen*, AP No. 08-94 (App. Div. 1996).

To the present panel of Samoan Associate Judges, a landless Samoan family with a legally recognized *matai*, especially with a longstanding history as communal land occupants, does not add up. To the contrary, the Court here is satisfied, and finds, that defendant's branch of the family are also members of the Fanene extended family attached to the Village of Pago Pago, and as such are accordingly entitled to Fanene communal family holdings *Lalopua*, as they have been occupying, in accordance with the 1945 *Lalopua* land decision. As such, the defendant and her branch of the family's entitlement to communal land is a proprietary right within the due process clause of the territorial constitution. AM. SAMOA REV. CONST. art. I, § 2; *Fairholt*, 1 A.S.R.2d at 74; *Lutu v. Taesaliali`i*, 11 A.S.R.2d 80, 87 (Land & Titles Div. 1989).

We further conclude, consistent with fundamental precepts of Samoan custom that *pule*, at least with regard to those portions of *Lalopua*, under occupation and cultivation by defendant's family, lies in their *sa`o*, or senior *matai*, viz., Fanene F. Kava.

Plaintiff's petition for eviction on the basis of *pule* must be, and it is hereby denied. Judgment will enter for defendant.

It is so ordered.